IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| KEVIN JEWELL, | ) |
| | ) |
| Plaintiff, | ) Civil Case No. 08-307-KI |
| | ) |
| vs. | ) OPINION AND ORDER |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Richard F. McGinty
McGinty & Belcher
P. O. Box 12806
Salem, Oregon 97301

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

David Morado
Regional Chief Counsel
Mathew W. Pile
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Kevin Jewell brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Jewell had severe impairments of an anxiety disorder, not otherwise specified with panic; rule-out bipolar spectrum disorder; rule-out borderline personality disorder with antisocial traits; and cardiomegaly[1] status post July 7, 2004 mechanical heart valve

---

[1] Abnormal enlargement of the heart. Dorlands Medical Dictionary, http://www.mercksource.com (use Search MerckSource on the home page).

replacement. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

After reviewing the record, the ALJ found that Jewell had the residual functional capacity to perform light work, lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; to stand, walk, and sit up to 6 hours each in an 8-hour workday; and was limited to simple repetitive tasks with no more than occasional direct contact with the public. Based on vocational expert testimony, the ALJ found that Jewell could work as an assembler of small parts, a housekeeper, and a packaging line worker. Thus, the ALJ concluded that Jewell was not disabled under the Act.

## FACTS

Jewell claims to have been disabled since February 11, 2002 due to a leaky heart valve; poor circulation in hands, legs, and feet; ulcerations in the feet and ankles; and mental health problems. Jewell, who was 26 years old at the time of the ALJ's opinion, has a GED and work experience as a telemarketer, retail salesperson, computer technician, painter, and mover, although Jewell performed most of these jobs only briefly.

Jewell has had hospitalizations for cellulitis and infected ulcers on his foot from a brown recluse spider bite that did not heal properly, blood clots in his legs, a suicide attempt, and a mechanical heart valve replacement in 2004. The hospitalization for heart surgery became complicated due to psychiatric issues. He has a history of marijuana abuse. Jewell complains of dizziness and disorientation from his heart problems; occasional angina; painful, infected ulcerations on his legs; and numbness and pain in his leg, feet, and hands. Specifically, Jewell

Page 5 - OPINION AND ORDER

complains of sharp stinging pain in his ankle, throbbing pain in his chest, and aching in his legs, all on a daily basis whenever his heart rate is increased. He can only be active between five to thirty minutes before he needs to rest. Jewell takes two one-hour naps each day. Jewell was sexually abused as a child and spent many years in foster care. He is now in contact with his mother but the relationship is difficult. Jewell describes his emotions as anxious, depressed, suicidal because of the pain, antisocial, argumentative, and irritable.

Jewell lives with a roommate and washes his own laundry and dishes, cooks meals that take less than five minutes, shops twice a month, feeds his pets, and does some light housework but might have to rest during the task. For entertainment, Jewell plays video games, watches television as much as five hours on some days and none on other days, attends church for two hours every other week, draws, reads, and writes. He uses his computer for entertainment about two hours a day. Jewell no longer participates in welding, blacksmithing, glass blowing, carpentry, electronics, bike riding, leather working, and historical reenactment groups because of his symptoms. About six to eight hours a week, Jewell assists his mother take care of year-old triplets but he is never left alone with them. In April 2004, Jewell told the examining psychologist, Dr. Stoltzfus, that he usually leaves the house around noon to find something to keep busy, such as going to auctions, buying and selling items on the Internet, or helping with the renovation at his aunt's house.

## DISCUSSION

I.      Compliance with Medical Treatment

Jewell received no medical treatment between the summer of 2004 and the time of the ALJ's hearing in December 2006.

Jewell contends that the ALJ erred by denying benefits for noncompliance with medical treatment due to his inability to stop smoking, his missing appointments, and inconsistent use of prescribed medication. According to Jewell, the ALJ did not make the necessary additional findings required by statute prior to denying benefits for the noncompliance.

The Commissioner argues that the ALJ did not deny Jewell's application for lack of compliance with medical treatment under 20 C.F.R. § 416.930 and SSR 82-59. That regulation and ruling only apply if an individual has a disabling impairment and does not follow prescribed treatment which is expected to restore their ability to work.

Because the ALJ did not find that Jewell was disabled, I agree with the Commissioner that the ALJ did not deny Jewell's application for lack of compliance with medical treatment. The ALJ did state that he found no evidence that Jewell had a valid excuse for "repeated, chronic medical non-compliance." Tr. 20. The ALJ continued with the normal five step disability analysis and appears to have considered the non-compliance only when determining Jewell's credibility. No error was committed.

II.     Jewell's Credibility

Jewell claims that the ALJ improperly rejected his credibility because the laundry list of reasons given do not provide a rationale demonstrating why Jewell is not fully credible.

The Commissioner concedes that some of the ALJ's reasons for discounting Jewell's credibility were not clear and convincing, specifically Jewell's failure to quit smoking and his receipt of unemployment benefits. The fact that the ALJ improperly considered some reasons for finding a plaintiff's credibility undermined does not mean that the ALJ's entire credibility

Page 7 - OPINION AND ORDER

assessment is improper.  Batson, 359 F.3d at 1197.  The Commissioner contends that the remaining reasons given by the ALJ are sufficient to support the determination.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

The ALJ noted Jewell's incarceration between late 1999 and late 2000, plus a few shorter periods in 2004 for probation violations.  The ALJ mentioned this in explaining that Social Security benefits are not paid during periods of incarceration.  This discussion of Jewell's incarceration was not part of the credibility analysis.

The ALJ then stated that during the hearing, Jewell was initially evasive about his periods of incarceration and his drug and alcohol abuse.

I did not see anything in the record indicating that Jewell abused alcohol.  At the hearing, he denied drinking at that time.  The medical records indicate only limited drinking, not to excess, and Jewell was not questioned at the hearing to clarify if he used to drink but stopped. The ALJ's reliance on evasiveness about alcohol abuse is not supported by substantial evidence.

Page 8 - OPINION AND ORDER

At the hearing, Jewell did first state that he was not violated on his parole and later stated that he was violated a few times in 2004, for not paying the fees, resulting in a 30-day and a two-day incarceration. Further, Jewell also changed his explanation at the hearing about his marijuana use. The record indicates that Jewell often denied any marijuana use when talking to health care professionals, but occasionally admitted use for the same time periods. It was reasonable for the ALJ to consider these answers evasive.

The ALJ noted that Jewell strongly denied abusing his son but contended that he was forced not to contest the charge to keep his son from being placed into foster care. There is very little information about this situation in the record except that Jewell apparently pleaded "no contest" instead of guilty. That plea is not inconsistent with Jewell's denial of abuse. There is insufficient information about the charge and its resolution to use the situation as a reason to discredit Jewell.

As mentioned above, the ALJ considered Jewell's lack of compliance with medical treatment. This can be a reasonable factor to consider if supported by the record. Smolen v. Chater, 80 F.3d, 1273, 1284 (9th Cir. 1996) (unexplained failure to follow prescribed course of treatment is factor to consider in credibility analysis). It is true that Jewell only attended two mental health appointments in August 2004 before being discharged for missing appointments. The only reason Jewell gave was his lack of insurance at times. From the record, it is clear that Jewell was incarcerated on three occasions, one of them lengthy, that at times he had insurance and at other times he did not, and that at one point he could not go to the mental health treatment provider to whom he was referred because his insurance did not cover that provider. It is unclear when all of these things happened. There is also mention of discontinuing medications at times

Page 9 - OPINION AND ORDER

because of side effects. Moreover, Jewell has an admitted problem with authority figures and, at his relatively young age, a difficult relationship with his mother who took him to most of his medical appointments because Jewell does not drive.

On this record, the lack of compliance is not a clear and convincing reason for discrediting Jewell, particularly because of his mental health problems. "[A]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (internal quotation omitted). I also note that Jewell appeared to comply with the treatments for his physical problems, including keeping the ulcer on his leg dressed, taking antibiotics to control the infection, taking heart medications, and having heart surgery. Further questioning by the ALJ on why the various mental health treatments were discontinued would be needed before reliance on noncompliance would be appropriate.

Finally, the ALJ described Jewell's daily activities–including a five-day bus trip to Louisiana which ended in a two week hospitalization in Salt Lake City on the return home; helping his mother take care of triplets; doing light housework, laundry, and food shopping; spending two hours a day on his computer; buying and selling computer parts at auctions; and helping with renovations at his aunt's home–and found that the exertion level was significantly greater than the limitations Jewell claimed. Daily activities are one of the factors typically considered in a credibility analysis. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ did not err by making this determination.

In sum, the legitimate and supported reasons given by the ALJ to discredit Jewell are his evasiveness about his incarcerations and drug use and his daily activity level. These reasons, taken together, are clear and convincing reasons to reject Jewell's testimony.

III.  Lay Testimony

Jewell contends that the ALJ did not properly evaluate the testimony of his mother, Angela Tena, because, although it is clear that the ALJ discounted the testimony, the ALJ did not report the weight he gave it. Moreover, if the ALJ gave little weight to Tena's testimony, Jewell claims that the determination was based on speculation rather than evidence.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Commissioner of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).

Tena testified that Jewell was very depressed and needed prompting for just about anything, that he does not get along with authority figures, that she was afraid that he could harm himself if he becomes overwhelmed, that he has concentration and focus problems which cause him to forget things she asks him to do, that she talks him through panic attacks, and that she cannot reason with him when he is very depressed. The depression gets bad enough to cause Tena concern for a couple of weeks every two or three months.

The ALJ stated that if Tena "truly felt that her son had marked problems with his concentration and focus, anger, and panic attacks, as testified, the undersigned strongly suspects that she would not allow him to help care for her 1 year-old triplets, no matter the level of oversight of this said care." Tr. 20.

It is clear that the ALJ discounted Tena's testimony to the same extent he discounted Jewell's testimony–the testimony is credible only to the extent that Jewell can perform light work limited to simple repetitive tasks with no more than occasional public contact. Further, the ALJ gave a valid reason to discount Tena's testimony which is germane to her situation. Taking care of one-year-old triplets is a difficult task, even for someone who does not have the mental health issues Tena claimed Jewell has. No error was committed.

IV.     Evaluation of Medical Opinions

Jewell argues that the ALJ incorrectly analyzed some of the physicians' opinions. The Commissioner claims that the ALJ's analysis was adequate.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 1066 n.2.

A.     <u>Dr. Stoltzfus</u>

Jewell argues that the ALJ improperly rejected Dr. Stoltzfus's diagnoses of post traumatic stress disorder and cannabis abuse.

Dr. Stoltzfus, a psychologist, examined Jewell in April 2004. Jewell reported panic attacks, agitation, loss of control, a belief of being watched by the government, severe mood swings that had worsened recently, problems with authority, suicidal thoughts, hearing voices and seeing things not there, and having arguments between his three streams of consciousness which include a good side, a bad side, and a mediating side. Dr. Stoltzfus gave Jewell a mental status examination but no formal written testing. Dr. Stoltzfus diagnosed generalized anxiety disorder; panic disorder without agoraphobia; post traumatic stress disorder traits; bipolar disorder NOS, provisional; cannabis abuse; and borderline personality disorder with antisocial traits. He stated:

> Based on the client's self report, which did appear credible as he was quite intense and tended to minimize his problems, he meets the criteria for significant psychiatric and personality deficits. Psychotropic medication needs to be managed more aggressively and more effectively and he was advised to follow through with mental health appointments. He has been suffering from severe social anxiety and probably generalized anxiety with symptoms of panic attacks prior to adolescence. The anger outbursts and extreme mood swings appear a combination of PTSD, generalized anxiety, paranoia and borderline personality disorder. His mood swings suggest the possible presence of Bipolar Disorder but if he is suffering from Bipolar Disorder the symptoms are quite unusual in that the moods shift dramatically within the course of the day and usually are set off by a specific event. He certainly does have highs and lows and vacillates wildly between suicidal depression and grandiosity.
>
> The patient is very concerned regarding his heart condition and need for surgery [performed three months later]. He believes his physical problems are significant. His mental health problems are certainly significant and he would actually benefit from inpatient stay until his need for psychotropic medication is effectively addressed. He is not considered a good candidate for competitive employment. He probably does want to work but combination of physical and

Page 13 - OPINION AND ORDER

>mental health problems prevent any type of stability emotionally, socially or vocationally. He is considered able to handle his own finances if he doesn't misallocate his funds on marijuana, which he stated he uses sporadically, typically several times a month.

Tr 302-06, 369.

The ALJ acknowledged Dr. Stoltzfus's opinion but gave more weight to the State Agency examiners because: (1) Jewell was still abusing marijuana and alcohol near the time of Dr. Stoltzfus's examination; (2) Jewell was avoiding mental health treatment and psychotropic medications at that time; and (3) Dr. Stoltzfus also observed that Jewell could self-groom, perform odd jobs, could manage his own funds, and had coherent thought processes, intact concentration, and average intelligence.

As mentioned above, I see no evidence of alcohol abuse in the record. For the reasons discussed above, there is not enough of a record on the avoidance of mental health treatment and medications to rely on the point to discredit Dr. Stoltzfus's opinion that Jewell was not a good candidate for competitive employment.

Jewell did admit to Dr. Stoltzfus that he was using marijuana but there is nothing in the record on whether the usage decreased Jewell's functionality. On the third reason given–the observation of several areas in which Jewell did function reasonably–I must weigh the observation with Dr. Stoltzfus's opinion that Jewell would benefit from an inpatient psychiatric stay and was too unstable for a competitive employment situation. The ALJ did not give clear and convincing reasons to reject Dr. Stoltzfus's opinion on Jewell's functionality.

V.    Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court

Page 14 - OPINION AND ORDER

should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

Even if I fully credit Dr. Stoltzfus's opinions, it is not clear to me that Jewell is disabled. Thus, I will remand the case for rehearing. I ask the ALJ to reconsider Dr. Stoltzfus's opinion and suggest that formalized psychological testing be performed. I also ask the ALJ to reconsider Jewell's drug use and whether it affects the disability analysis. Finally, I take note of Jewell's concern about a disconnect between the Dictionary of Occupational Titles ("DOT") and the United States Census Bureau reported through the Occupational Employment Quarterly and ask the ALJ to address the issue with the vocational expert.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this ___4th___ day of June, 2009.

                                               /s/ Garr M. King
                                               Garr M. King
                                               United States District Judge